## T. M. BAGBY, SHERIFF, v. W. Q. BATEMAN ET AL.

1. SINKING FUND — COUNTY BONDS — CONSTITUTIONAL LAW.—Section 23 of article 12 of the Constitution of 1869 provides : "It shall be the duty of the Legislature to provide by law, in all cases where a State or county debt is created, adequate means for payment of current interest, and two per cent. as a sinking-fund for the redemption of the principal; and all such laws shall be unrepealable until such principal and interest are fully paid : " *Held*, Not to prohibit the issuance of bonds and a tax to pay interest thereon and the principal within ten years from their date, the provision being designed to compel payment of all such bonded indebtedness within fifty years ; said bonds being authorized by a special act authorizing a county to fund its indebtedness.

2. SAME.—Sections 5 and 6 of " An act to authorize the county of Marion to audit and fund the debt of said county, (Special Laws, 13th Leg., p. 178,) authorizing the issuance of county bonds payable in ten years and to levy a tax to pay the principal and interest as they should become due : *Held*, Not in conflict with the Constitution.

APPEAL from Marion.    Tried below before the Hon. B. T. Estes.

An accurate statement of the case is made in brief of appellant.

*H. McKay, Edward Guthridge,* and *J. H. Culberson,* for appellant.—This suit was instituted at the Spring Term, 1878, of the District Court of Marion county, by the appellees, in their own behalf and in behalf of all other taxpayers of said county similarly situated, against the appellant, who was then and is now the sheriff and collector of taxes in and for said county, to enjoin the collection of the sum of one dollar and twelve cents on the one hundred dollars' valuation of taxable property situated in said county, of the county taxes levied by the County Commissioners' Court of said county for the year 1877 at its February Term for said year.

Appellees allege in their original petition, substantially, that said Commissioners' Court at said February Term, 1877, had levied on all taxable property of said county the sum of twenty-

five cents upon the one hundred dollars' valuation of taxable property in said county for general county purposes, and the further sum of one hundred and thirty-seven cents upon the one hundred dollars' valuation of taxable property *ad valorem* for the purpose of paying the principal and interest of the debt of said county incurred prior to the 18th day of April, 1876; that one hundred and twelve cents of the said levy of one hundred and thirty-seven cents was illegal, unjust, and void; that appellees had tendered to appellant, as sheriff and tax collector in and for said county, the sum of fifty cents on the one hundred dollars' valuation of taxable property *ad valorem* situated in the said county of Marion, and that the said sum of fifty cents on the one hundred dollars' valuation of taxable property situated as aforesaid is all the tax that can by law be levied and collected by said county for general purposes and for paying outside indebtedness; that said sheriff was threatening to sell property for the payment of said illegal taxes, and that he had advertised real estate belonging to said appellees and others for sale, and by such sale a cloud will be cast upon the title of appellees and they left without remedy; that said sheriff is threatening to seize and sell personal property of appellees, and will do so, for the payment of said alleged illegal taxes, unless restrained, and that such seizure and sale will produce a multiplicity of suits, and thereby great and irreparable damage to appellees; praying for injunction restraining the collection of said one hundred and twelve cents illegally levied, &c.

At chambers, on April 12, 1878, the Hon. B. T. Estes, judge of the fifth judicial district, granted the injunction prayed for, fixing the bond at $1,000.

Proper bond was filed April 16, 1878, and injunction issued accordingly same day.

On April 24, 1878, appellant filed his original answer under oath. On same day Marion county was granted leave to intervene and defend the suit, and on the same day filed an answer, adopting all the answers and defenses of appellant

then on file.   On May 3, 1878, appellees filed a supplemental petition, pursuant to leave of the court granted May 16, 1878. Appellant and said county, in May, filed an amended answer.

Appellant's and intervenor's joint original answer is a general demurrer and special exceptions and demurrer for want of equities, also setting forth the various general and special taxes levied by the County Commissioners' Court of Marion county at its February Term, 1877, and the purposes for which, and the authority by virtue whereof, the same were levied, aggregating the said sum of one hundred and sixty-two cents on the one hundred dollars *ad valorem*, and that all of said taxes were legally and properly levied; that the said appellees and all other taxpayers in said county were estopped from questioning the legality and regularity of the said levies or the legality and validity of the several debts and classes of debts for the payment of which the said several levies were made.

At the April Term, 1878, the court overruled the demurrer and special exceptions of appellant and intervenor to appellees' petition, and appellant and intervenor excepted; and upon June 1, 1878, the cause was tried upon its merits by the court, no jury being demanded, upon an agreement that all the facts alleged in the original and supplemental petitions and in the defendant's and intervenor's amended original answer were proven before the court, and the special laws referred to and plead by caption in said answer were read to the court in evidence, in full and in all their terms.

The trial resulted in a judgment dissolving said injunction as to all of said taxes, except the sum of forty-five cents levied for the payment of the funding-act debt, and perpetuating the same as to the said levy and collection of said forty-five cents for the debt known as the funding-act debt and for costs against appellant and intervenor.

Appellant and intervenor moved for a new trial, which motion was overruled, and defendant and intervenor excepted and gave notice of appeal.

The county declined to perfect the appeal and the appellant prosecutes the same alone.

I. It is alleged in plaintiffs' petition that the levy by the Commissioners' Court at its February Term, 1877, of one hundred and twelve cents on the one hundred dollars' valuation of property is illegal and void.

This is no ground for equitable relief. (High on Inj., sec. 354, p. 195; Cooley on Tax., p. 536, *et seq.*)

II. If the taxes were illegally levied as charged, and the sheriff was proceeding to collect the same, he was only a trespasser. For the trespass plaintiffs had ample remedy at law, and a court of equity will not interfere. (High on Inj., sec. 362, p. 202; Id., sec. 366, p. 206; Cooley on Tax., p. 538, and notes.)

III. It is alleged in plaintiffs' petition that the sheriff has already advertised for sale various tracts of land belonging to plaintiffs and others for the payment of said alleged illegal taxes, and that he will sell said land unless restrained, &c., and thereby a cloud will be cast upon plaintiffs' title and they left without remedy.

A sale of real property for illegal taxes will in nowise cloud title. (Cooley on Tax., p. 542, and notes; High on Inj., secs. 367, 368, pp. 205, 206.)

IV. It is alleged in the petition that the defendant is threatening to seize and sell personal property of petitioners for satisfaction of said alleged illegal tax, and that such seizure and sale of personal property will produce a multiplicity of suits, and thereby great and irreparable damage will result to petitioners. A mere threat to seize and sell personal property will not authorize the interference of courts of equity by injunction, the quiet possession and enjoyment of the property not having been disturbed. (Cooley on Tax., p. 538, and notes; Story's Eq. Jur.; Adams' Eq.)

V. If there be seizure and sale of personal property for the payment of an illegal tax, there will be no irreparable injury to the parties under the allegations in the petition. There be-

ing no insolvency of the sheriff and his sureties alleged, the party has his legal remedy. (Cooley on Tax., pp. 538, 539; High on Inj., sec. 362, p. 202.)

VI. No such multiplicity of suits will result to any of said plaintiffs or any other taxpayer by seizure and sale of personal property for payment of illegal taxes, (such seizure and sale being a trespass,) as will authorize the intervention of a court of equity by injunction. (Cooley on Tax., pp. 546, 547; High on Inj., sec. 12, p. 9.)

VII. Irreparable injury complained of as resulting from seizure and sale of personal property. No irreparable injury or damage can result from seizure and sale of personal property, the parties having adequate legal remedy. (Cooley on Tax., pp. 538, 539, and notes; High on Inj., sec. 362, p. 202; Id., sec. 366, p. 204.)

VIII. The facts constituting the irreparable injury should be stated; general averments are not sufficient. (High on Inj., secs. 461, 462.)

IX. The insolvency or inability of the sheriff and his sureties to respond in an action for damages at law is nowhere alleged in the petition. Where an adequate legal remedy for the trespass exists, courts of equity will not interfere, unless the party committing the alleged trespass is insolvent and unable to respond in damages. (High on Inj., sec. 366.)

X. Plaintiffs allege only a threat to seize and sell personal property. A mere threat to sell personal property for taxes, without in anywise disturbing the possession or use of the same, is no ground for equitable relief. (High on Inj., sec. 366.)

XI. At and before the 21st of July, 1873, the county of Marion owed various and divers debts, amounting to the sum of $55,857.51. Said debts were, by the Police Court of Marion county, about the 21st of July, 1873, funded into bonds in the sum of $100 each, maturing at ten years, with interest at eight per centum per annum, with coupons thereto attached for said interest, payable July 1 of each year; said

bonds and coupons payable to the bearer; that said indebtedness of said county was returned, settled, and cancelled, and said bonds issued and emitted in their stead; that said bonds went into the hands of innocent holders, and are still in such hands; that the whole of the principal and a large part of the interest thereon was due February, 1877, and is still due; and that the amount of money raised by said tax of forty-five cents upon the one hundred dollars' valuation of taxable property in said county was not sufficient to pay said interest due and the sinking fund, &c.

The Police Court of Marion county, in 1873, had full and ample power to fund the said debt, and to issue said bonds, and to levy a tax to meet the annual interest, and to provide a sinking fund for the principal. (Special Laws of Texas, 13th Leg., pp. 175–182; 2 Paschal's Dig., art. 6113; George v. Dean, 47 Tex., 89; Dean v. Labadie, 47 Tex., 90.)

XII. Said bonds were issued for good and valuable considerations, and became and are a valid contract between the holders thereof and the county of Marion. (Special Laws of Texas, 13th Leg., ch. 49, sec. 5, p. 178; 2 Paschal's Dig., art. 6113; George v. Dean, 47 Tex., 89; Sedg. on Const. and Stat. Laws, 581, et seq.; Cooley on Const. Lim., p. 223.)

XIII. The contract between the said county and the holders of said bonds comes within and embraces the obligation on the part of the county to provide funds by taxation to pay the annual interest and provide a sinking fund to pay the principal at maturity, and is inviolable and in nowise affected by any subsequent constitutional provision or statute law of the State. (Const. of Texas, art. 1, sec. 10; Const. of U. S.; Sedg. on Const. and Stat. Laws, 284, 285, 292, and notes; Von Hoffman v. Quincy, 4 Wall., 535.)

XIV. Said bonds and coupons being payable to bearer, and issued and emitted in full compliance with the statute of this State, became and are negotiable securities, and valid and binding upon the county in the hands of innocent hold-

ers. (Board *v.* Texas and Pacific R. R. Co., 46 Tex., 328; Danl. on Neg. Inst., sec. 1500.)

The plaintiffs and all other taxpayers of Marion county are estopped from attacking or questioning the validity and legality of the said bonds and coupons, or the power and duty of the County Commissioners' Court to levy the tax complained of to pay the same. (2 Danl. on Neg. Inst., p. 485, sec. 1545, and notes; Id., 1547, note 1; Id., secs. 1548, 1549; Supervisors *v.* Schenck, 5 Wall., 772; The State *v.* Van Horn, 7 Ohio St., 331; Herm. on Est., secs. 557, 560, pp. 523 527.)

*M. L. Crawford* and *G. T. & C. S. Todd,* for appellees.—The demurrer was properly overruled.

Appellant does not allege any reason why the validity of the tax may not be determined as well before as after the taxes are collected. (Blessing *v.* City of Galveston, 42 Tex., 653; George *v.* Dean, 47 Tex., 73.)

There is no statement of facts that the court can notice.

Counsel for both parties in the lower court agreed that the facts alleged in the original and supplemental petition and in the amended original answer were proven before the court, and the special laws referred to by caption in the original amended answer were before the court in evidence, in full and in all their parts.

The provisions of the special statutes are not incorporated in the statement of facts, and the laws referred to only by caption.

The court must look alone to the statement of facts contained in the record, and cannot consider the provisions of any special law not incorporated in the statement of facts.

No provision of the special act of March 31, 1873, is set out in the statement of facts or in any part of the record, and is only referred to by caption in the transcript.

If the court can consider the special act of the 31st of March, 1873, in the manner presented by the statement of

facts, then said. act is unconstitutional and void, for this: the Legislature could not authorize the issue of bonds requiring a greater sinking fund than two per centum per annum.

The bonds were in sums of $100 each, payable to bearer ten years after date, with eight per centum per annum, coupons attached. (Const. of 1869, art. 12, sec. 23; Sherrard *v.* Lafayette Co., 3 Dill., 236.)

There is no allegation or proof in the record as to who are the holders of the bonds, or that they are held by innocent purchasers for value.

*H. McKay,* for appellant, in reply.—The special laws referred to in the statement of facts are general in their character and will be judicially noticed. (See Special Laws, 2d Sess., 13th Leg., pp. 175–182; Sedg. on Stat. and Const. Law, ed. 1857, pp. 33, 34.)

Appellees, in their brief, assert that the said special law is unconstitutional.

Corporations may fund their debts and issue bonds therefor. (See 1 Dill. on Mun. Corp., secs. 36, 41, 86, note 2.)

Such bonds become an inviolable contract. (Dill. on Mun. Corp., sec. 41; 9 Wall., 485.)

When doubts exist as to the constitutionality of a statute, the statute will be sustained. (Sedg. on Const. and Stat. Laws, last edition, p. 411.)

Laws are not held unconstitutional on slight grounds. (Sessums *v.* Botts, 34 Tex., 347; 6 Cranch, 128; 12 Wheat., 274.)

An act of the Legislature is presumed to be constitutional till otherwise adjudged. (34 Tex., 347.)

For conclusive argument, we respectfully invite the attention of the court to brief of Hon. P. W. Gray, in 34 Tex., 342, 343.

Bonds issued under an unconstitutional law and passed into the hands of innocent holders, &c., before the law be so adjudged, are valid and binding. (Cooley's Const. Lim., p. 187, note 2; Steines *v.* Franklin Co., 48 Mo., 167; The State *v.*

Saline Co., 48 Mo., 390; Columbia Co. *v.* King, 13 Fla., 451; Columbia Co. *v.* Davidson, 13 Fla., 482.)

Unconstitutional acts are voidable, and not void. (Cooley's Const. Lim., sec. 3, p. 163.)

There is no limit upon the Legislature by the Constitution of 1869 as to amount of taxation. (Const. 1869, art. 12, secs. 18–22.) Nor is there any such limit upon counties, unless imposed by legislation. The special law of March 31, 1873, (Special Laws, 2d Sess., 13th Leg., sec. 6, p. 179,) limits the amount of taxes to be levied and collected upon property, real and personal, to such amount as will, with other special taxes in said act provided for, pay off the annual accruing interest and the principal in ten years. Such power conferred on the county does not contravene section 23 of article 12 of the Constitution of 1869. In such cases the current interest and at least two per cent. of the principal, as a sinking fund, shall be provided for before the debt can be created, the two per cent. not being the limit of the actual levy and collection for the payment of the principal at maturity.

The only restriction imposed by said section 23 of article 12, is that no debt can be created until there be provisions for paying the current interest and at least two per cent. of the principal as a sinking fund, irrespective of the amount of the debt or the date of maturity.

Many bonds have been issued by the State and counties by acts of the Legislature under said Constitution, maturing variously at from five to thirty years; and in every case the current interest and two per cent. of principal as a sinking fund have been provided for only for the purpose of complying with this constitutional requirement, the actual payment of the bonds being, in a great measure, in every case, otherwise provided for. Yet these bonds are valid debts, and are sought and held as the most valuable securities.

*M. L. Crawford*, for appellees. — Injunction is the proper remedy. (High on Inj., secs. 12, 374.)

The provisions of the Constitution are mandatory, and words must govern. (Cooley's Const. Lim., 57, 78.)

The act under which the bonds were issued (Special Laws, 13th Leg., 175) is unconstitutional. (5 Ind., 569; 3 Seld., (N. Y.,) 9.)

The county and taxpayers are not estopped. (Dill. on Mun. Corp., 381, 749.)

Moore, Chief Justice.—This suit was brought by appellees, in their own behalf and in behalf of other taxpayers of Marion county similarly situated, to enjoin and restrain appellant, as sheriff, from collecting certain taxes particularly enumerated in their petition, and alleged to have been illegally levied and assessed upon their property by the County Court of Marion county. On the hearing of the case in the court below judgment was rendered against the plaintiffs (appellees in this court) in respect to all the taxes sought to be enjoined by them, except a tax of forty-five cents on the one hundred dollars' valuation of the taxable property of appellees levied by the County Court under and by authority of an act entitled "An act to authorize the county of Marion to audit and fund the debt of said county." But as to this tax the judgment of the court was in favor of appellees, and appellant was perpetually enjoined and restrained from its collection.

The case having been tried by the court without a jury, we cannot tell from the record upon what precise ground of objection to this tax it rested its judgment. From the briefs and arguments of counsel, however, we infer that it must have been upon the supposition that the act of the Legislature previously referred to, and under which it was levied, contravenes the provisions of section 23 of article 12 of the Constitution of 1869, which was in force when the act was passed.

The section of the Constitution in question reads as follows: "It shall be the duty of the Legislature to provide by

law, in all cases where a State or county debt is created, adequate means for payment of current interest, and two per cent. as a sinking fund for the redemption of the principal; and all such laws shall be unrepealable until such principal and interest are fully paid." It is insisted by appellees' counsel, and we suppose must have been held by the court, that this section of the Constitution prohibits the Legislature from enacting any law under which the State or county can issue bonds unless adequate means are provided for the payment of the current interest and precisely two per cent. as a sinking fund; that this section of the Constitution is a limitation of as well as a grant of power, and is both mandatory and restrictive; and, as counsel insists, it is absolutely essential to the validity of any such debtor bond that the sinking fund provided must be precisely two per cent.—nothing more and nothing less. If this is the proper construction of the Constitution, the judgment is unquestionably correct; for it is evident that the sinking fund provided in the act under which this tax was levied does not conform to this requirement. The bonds authorized by the act run merely for ten years. The provision made in it for a sinking fund seems to be adequate for their payment in ten years from the date of issuance. But is this the proper construction of this section of the Constitution? It is certainly novel, and strikes us as startling. It is certainly in conflict with the construction which has been uniformly given to this section of the Constitution by the Legislature, as well as by the public generally; for certainly many debts have been created by the State and counties which must be held unconstitutional if appellees' construction of this section is correct, without their having been called in question. We, however, can see nothing in either its language or spirit inviting, much less demanding it. The object of this constitutional provision was no doubt to give faith and credit to bonds which the State or counties might be forced to issue in cases of emergency. It was also intended to protect the people from the

burden of a perpetual public debt by fixing fifty years as the limitation for its payment, and also to compel the generation by whom it is created to discharge its reasonable share of it; while, as is well known, there is a class of political theorists who entertain the most latitudinarian construction of the powers as well as the duty of the government, who favor liberal and often wasteful expenditures by it, who maintain that a public debt is a public blessing. Legislatures entertaining these views, if not restrained by constitutional limitations, might succeed in fixing a debt upon the people that could not be discharged by generations to come. Next to the rule "pay as you go," there can, we think, be no better means devised to restrain the reckless creation of public debt than to fix the time within which it must be paid, and require the people by and for whom it is created to contribute in reasonable proportion to its discharge. The time of payment cannot extend beyond fifty years; but the object for its limitation plainly demonstrates that it should be discharged sooner if it can be done with due regard to public interest. The law here in question required the levy of a tax adequate to pay the bonds within ten years. The sinking fund necessarily exceeds two per cent. This is all that the Constitution requires. We think, therefore, the court, instead of perpetuating the injunction for its collection, should have dissolved the preliminary injunction and have dismissed the petition.

REVERSED AND DISMISSED.