## COMMISSIONERS' COURT OF FLOYD COUNTY et al. v. NICHOLS et al.

(Court of Civil Appeals of Texas. Amarillo. Nov. 11, 1911. Rehearing Denied Dec. 23, 1911.)

1. INJUNCTION (§ 143*)—PROCEEDINGS—DISCRETION OF TRIAL COURT.

It is discretionary with the trial court, on application for a temporary injunction, to act upon plaintiff's petition without notice to defendants, or to permit them to present pleadings and evidence and dispose of the matter as then presented.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 315; Dec. Dig. § 143.*]

2. APPEAL AND ERROR (§ 837*)—QUESTIONS PRESENTED FOR REVIEW.

On an appeal from an order granting a preliminary injunction, where all of the pleadings of both parties, together with written instruments and oral testimony, were considered by the court below, and all such matters were properly brought before the appellate court, that court in disposing of the appeal will consider the entire record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3263; Dec. Dig. § 837.*]

3. COUNTIES (§ 116*) — COMMISSIONERS' COURTS—POWERS.

The commissioners' court of a county is not required to advertise for bids before adopting plans and specifications for and making a contract for the building of a courthouse.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 187; Dec. Dig. § 116.*]

4. COUNTIES (§ 196*)—INJUNCTION BY TAXPAYERS—BUILDING COURTHOUSE.

The question of the building of a courthouse rests in the discretion of the county commissioners, and hence, though the majority of the taxpaying voters are opposed, they are not entitled to an injunction to prevent the building of a courthouse according to plans selected by the court.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. § 196.*]

5. COUNTIES (§ 196*)—INJUNCTION BY TAXPAYERS—BONDS.

Where the commissioners' court, to avoid the necessity of submitting the question of the building of a courthouse to a vote, issued county obligations which were not bonds, such obligations were not invalid, and the taxpayers were not entitled to an injunction.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. § 196.*]

6. COUNTIES (§ 164*)—COMMISSIONERS' COURT—BONDS.

It being held that the commissioners' court had, under Act of February 11, 1881 (Acts 1881, c. 9), and Act February 4, 1884 (Acts 1884, c. 17), the power to construct courthouses when in their judgment they are necessary, and to pay for the same either by evidences of indebtedness or by bonds, Acts 1889, c. 149, and Acts 1903 (1st Ex. Sess.) c. 4, both providing that the county court may not issue bonds in excess of $2,000, except where authorized by a vote, do not restrict the power of the court to issue evidences of indebtedness.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 241–245; Dec. Dig. § 164.*]

7. COUNTIES (§ 196*)—TAXPAYERS' ACTION—PARTIES.

Where the commissioners' court had made and entered of record an order levying a tax, and a suit was thereafter brought by taxpayers to restrain the levy of the tax, a temporary restraining order forbidding the levying and collecting of the tax could not be sustained, where the officer whose duty it was to collect the tax was not a party to the suit.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. § 196.*]

8. COUNTIES (§ 196*)—TAXPAYERS' ACTION—REMEDY AT LAW.

Where the validity of evidences of indebtedness issued by the court of county commissioners to pay for the construction of a courthouse was doubtful, it being questionable whether they were bonds under Acts 1889, c. 149, the issuance of such indebtedness will not be enjoined at the suit of taxpayers, for, if invalid as bonds, they could not pass into the hands of an innocent holder, and the county could not be injured, and hence the remedy at law was adequate.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 308; Dec. Dig. § 196.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Appeal from District Court, Floyd County; D. B. Hill, Judge.

Suit by W. C. Nichols and others against the 'Commissioners' Court of Floyd County and others. From a judgment for plaintiffs, defendants appeal. Reversed and rendered.

A. L. Love and Davidson & Davidson, for appellants. J. N. Stalbird and Randolph & Randolph, for appellees.

GRAHAM, C. J. The pleadings in this cause are so voluminous that it is impracticable to attempt even a synopsis thereof without extending this opinion to a length that is not deemed advisable; besides, the conclusions we have reached render immaterial many allegations therein. In disposing of the controlling isues in the case, as presented by the pleadings, we will refer to the allegations bearing thereon sufficient to make clear our holding. This suit originated by certain property owning taxpayers of Floyd county, procuring in chambers an order for a temporary injunction, restraining the commissioners' court of Floyd county from levying and collecting, or attempting to levy, a courthouse tax in said county and to have declared void certain orders of the commissioners' court and a contract looking to the building of a courthouse.

The prayer to the bill is as follows: "Wherefore plaintiffs bring this suit for themselves and pray the court that said county judge and constituent members of said commissioners' court, and the said L. R. Wright & Co., be made defendants herein, and that said court and members thereof be temporarily restrained from the levy and collection of said tax, and that a temporary restraining order be issued by this court, restraining said commissioners' court from levying or attempting to levy said tax, and that upon final hearing hereof said temporary injunction be made perpetual, and that all of said orders and the contracts thereunder be declared void, for all costs, and for general relief and special relief, as they may be entitled to in law or equity."

And the order or fiat of the judge attached thereto is as follows: "The State of Texas, County of Dallam, in Chambers this 16th day of September, 1911. The foregoing petition for injunction being considered, it is ordered that the clerk of the district court of Floyd county, Tex., issue a temporary writ of injunction in all things as prayed for in the within petition upon the petitioners executing to the adverse party a bond with two or more good and sufficient sureties, in the sum of $7,500, conditioned as the law requires; to which action the defendant excepts and gives notice of appeal to the Court of Civil Appeals for the Seventh Supreme Judicial District of Texas, at Amarillo."

The bill on its face shows the disqualification of the judge of the Sixty-Fourth judicial district, in which Floyd county lies, as a reason for the presentation of the bill to the judge of the Sixty-Ninth judicial district.

The record shows that at the regular July term, 1911, the commissioners' court of Floyd county, at which the county judge and only three of the commissioners were in attendance, passed orders and resolutions declaring the necessity for building a new courthouse for Floyd county, adopted plans and specifications therefor, made and entered into a contract for the construction thereof, and levied a tax to provide a fund for the payment of the contract price, and caused all of said orders and resolutions, as well as said specifications and contract, to be placed of record in the minutes of the court. The record also shows that all of said orders and resolutions were passed on the same day, and that the plans and specifications were adopted and the contract entered into also on the same day, to wit, July 11, 1911. The record further shows that at the regular August term and on August 16, 1911, the county judge and all four of the commissioners being present and participating, and all voting therefor except one of the commissioners, who opposed same, the contractors also being present, a new contract was made and entered into for building said courthouse, the same plans and specifications being used as had been adopted at the July term, and the contract for building being made with the same contractors with whom the contract was made at the July term, the contract made at the August term being substantially the same as that made at the July term, though it was divided into two instruments, one covering the terms of the building and constructing proper, and the other covering the terms and conditions of payment, while all these matters were embodied in the one contract executed in July. The form of the warrants or bonds to be issued as provided in the August contract is also slightly changed from that provided for in the July contract. The record further shows that on August 16, 1911, said court also passed an order, levying a tax to raise funds to pay off the obligations created by and to be issued under the contract executed on that day, and caused to be placed of record in its minutes all of said orders, as well as a copy of said contract, which contained a copy of the moneyed obligation to be issued under it.

Appellees, in their pleadings, as also in their brief, as well as in oral argument before this court, insist that the orders passed by the commissioners' court, including the tax levy for building the courthouse, as well as the contract for building the same, was illegal and void, substantially on the following grounds:

(1) Because the commissioners' court is by law prevented from creating an indebtedness, either in the form of bonds or otherwise, in excess of $2,000, for building courthouses,

until the matter had first been submitted to a vote of the property owning taxpayers of the county and being authorized by such vote so to do, as provided in the Act of 1899, p. 258.

(2) Because the instruments to be issued under the contract actually made are in fact bonds within the meaning and intent of the Act of 1899, p. 258.

(3) Because the issuance of the obligations of the county in the form proposed is a mere subterfuge adopted as a means of avoiding compliance with the terms and provisions of the Act of 1899, p. 258; said obligations being in form and legal effect bonds.

(4) Because the contract was made without notice to the people of Floyd county; because the creation of the proposed debt was contrary to the wishes of the majority of the qualified property owning taxpaying voters of the county; because there was no advertisement for bids for building the courthouse; because no other bids than the one accepted were received; because said contract was in amount excessive to the extent of $10,000; because the court agreed to pay all expenses of litigation arising out of the execution of said contract; because said commissioners' court were not qualified to pass on the plans and specifications; because the contract and warrant provided for payment out of the general fund; because the rate of taxation provided for was excessive and would raise more money than would be required to build a courthouse; and, because of all the matters alleged, it was made to appear that the commissioners had knowingly acted in defiance of law and with intent and purpose of evading the law.

(5) Because, as said warrants have a semblance of legality, if in the hands of an innocent purchaser, they would be binding obligations against the county, even though the allegations in the pleadings show them void, and that injunction will lie at the instance of the taxpayer under such conditions.

(6) Because the commissioners' court has power to make contracts for building courthouses, a contract based on orders placed of record in the minutes, which prima facie show a legal contract, the obligations issued under such orders and based thereon are valid in the hands of innocent purchasers, and that as such action is being attempted by the commissioners entitles the taxpayer to relief by injunction.

(7) Because the judgment of the commissioners' court, acting within the bounds of its authority, is the judgment of a court of competent jurisdiction and cannot be attacked collaterally, hence the injunction is the only remedy in this case.

(8) Because commissioners' courts are empowered to decide as to the advisability of building a courthouse and the question of whether or not an election has been held as a prerequisite to the issuance of bonds

being also a matter to be passed on by said court, such bonds, when issued, became binding obligations against the county in the hands of innocent holders, notwithstanding no election was held; the record failing to show that an election was not held.

(9) It is also insisted by appellee that neither the trial court nor this court is authorized to consider any pleadings of appellant or evidence introduced in support thereof, though presented to the trial court and considered by it before making the order appealed from in this character of proceeding.

Appellants, in the court below, urged a general demurrer, as well as certain special exceptions, to appellees' pleadings, all of which were by the court below overruled, and complaint is made in this court as to said rulings by the court below.

Copies of all orders by the commissioners' court, as well as of all writings, including the plans and specifications, building contract, and a copy of the proposed warrant or bond, all referred to in the pleadings, are attached thereto as exhibits, and the court below having overruled appellants' general and special exceptions to appellees' pleading, and considered the said copies in so doing, an agreement in writing, as follows, appears in the record: "It is hereby agreed by and between counsel for the plaintiffs and defendants that the records and exhibits attached to plaintiffs' petition and made a part thereof were introduced and read in evidence and considered by the court on the hearing of the application for the temporary injunction herein." The county judge also having testified as a witness before the court below, a statement of facts covering his testimony also accompanies this record.

Appellants, in the court below, as well as in their brief and oral argument in this court, insist that appellees were not entitled to the relief prayed for and granted by the trial court under the pleadings and the evidence: (1) Because the prayer was for an order restraining the levy and collection of the tax, and the order granted said relief, while the record shows affirmatively that the order making the tax levy had been made and entered of record by the commissioners' court at the time the application for relief was made and the order granting same was entered; the record further showing that the only officer under the law who was authorized to collect such tax is not a party to this suit, and no relief was prayed for or granted as to him. (2) Because no election is necessary as a prerequisite to the right and power of the commissioners' court to contract for the issuance of, and to cause to be issued, any kind of interest-bearing obligations, other than bonds, as a means of paying for the building and constructing of a courthouse; and, further, that the obligations sought to be issued in this instance,

as shown by the record, are not bonds within the meaning of the Act of 1899, p. 258. (3) Because if the instruments sought to be issued in this case, as shown by the record, are held to be bonds, within the meaning and intent of the Act of 1899, there are no such allegations in the pleadings as will warrant a court of equity in granting the relief prayed for by appellees and granted by the trial court, as the allegations in the pleadings, considered in connection with the evidence introduced, show that said instruments, if bonds, are void.

[1] We cannot agree with appellees' contention that neither the trial court nor this court can consider appellants' answer and such evidence as was before the trial court and on which he acted in granting the order appealed from. As we understand the law, it was discretionary with the trial court to either act on appellees' pleadings, without notice to or hearing from appellants, or he could defer acting until such time as appellants could present their pleadings and evidence, and then dispose of the matter as then presented by both parties. The record shows the court below granted the order, after considering the pleadings of both appellees and appellants, as well as hearing and considering such evidence, record, and oral, as the parties saw fit to introduce before him.

[2] It is our duty to consider such matters only as were before the trial court and have been properly brought before this court. But, as all the pleadings of both parties, as well as copies of all orders passed by the commissioners' court and copies of all written instruments referred to in the pleadings, including the oral testimony of the county judge, were considered by the court below, before making the order appealed from, and all of said matters have been properly brought before this court, in disposing of this appeal we will give due consideration to the entire record so made. See City of Paris v. Sturgeon, 50 Tex. Civ. App. 519, 110 S. W. 459.

[3] As the law does not require the commissioners' court to advertise for bids before adopting plans and specifications and making a contract for building a courthouse, appellees were not entitled to any relief, because the commissioners' court in this instance failed to so advertise. See City of Waco v. Chamberlain, 92 Tex. 207, 47 S. W. 527.

[4] As the law lodges the discretion with the commissioners' court to pass on the advisability of building courthouses, the fact that a majority of the property owning taxpaying voters might be opposed to building a courthouse, or to the kind the commissioners' court elected to build, or the amount the commissioners had decided it should cost, would afford no grounds for relief by injunction, such as was sought and obtained in this case. See City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 960.

Under the authorities above cited, appellees complaint that the commissioners had but one bid before them, had agreed to pay expense of lawsuits growing out of the contract, were not qualified to act on plans and specifications, had levied a rate of taxes in excess of that actually needed, and other similar complaints, could afford no ground for equitable relief, such as was sought by appellees and granted by the trial court in this case.

[5] If in fact the bonds or warrants proposed to be issued are such in substance and fact as the commissioners' court had a legal right and power under the law to issue, without a vote of the taxpayers, the fact that the form and substance adopted may have been to avoid the necessity of a vote by the taxpayers being first had would give appellees no ground for the relief sought, as the obligations of indebtedness in that instance would be unquestionably a binding obligation of the county.

[6] Among other reasons urged by appellees in this court for affirmance of the judgment rendered by the trial court is that a proper construction of the Act of 1899, p. 258, requires, in all cases where the commissioners' court contract an indebtedness for the county in excess of $2,000 for building a courthouse, they are prevented from so doing unless the matter has first been submitted to a vote of the property owning taxpayers, as provided in said act; while it is contended by appellants in this court that said act has no application except in cases where a commissioners' court elects to issue bonds for the purposes mentioned in said act, and that said act does not in any way limit the commissioners' court from issuing any kind of interest-bearing evidences of indebtedness in payment of courthouse obligations without a vote of the taxpaying property owners being first had, provided only that such obligations be not bonds.

As our courts have uniformly held since the passage of Act Feb. 11, 1881 (Laws 1881, c. 9), and Act Feb. 4, 1884 (Laws 1884, c. 17), that the commissioners' courts of this state were empowered to construct courthouses, when in their judgment it was deemed proper, and could pay for same, either by evidences of debt, which were not bonds, or could issue bonds, as in their discretion might appear best, and as neither the Act of 1899, referred to, nor the Act of 1903 (1st Ex. Sess.), p. 9, by express terms limits the right or power of commissioners' court to contract and pay for courthouses in such way as they deem proper and on such terms as in their judgment may appear best, except that, if bonds are issued in excess of $2,000, the matter cannot be done except where authorized by a vote as provided in said Act of 1899, we are inclined, aside from the decisions hereafter noted, to the opinion

that, under the law as it existed when the commissioners' court in this case passed the order complained of and made the contract complained of, it had the legal right to issue and circulate, in payment of courthouse obligations, any kind of interest-bearing indebtedness of the county, without the people having voted on same, if such obligations were not bonds of the county. See Stratton v. Commissioners' Court of Kinney County, 137 S. W. 1171, and Cowan v. Dupree, 139 S. W. 887.

The question here under consideration was pointedly presented in both of said cases and holdings made in each of them against the contention of appellees herein. And in the case first cited the Supreme Court refused a writ of error.

The remaining questions presented by the record in this case are: (1) Does the record affirmatively show that the relief sought by appellees in their prayer and the judgment of the court below could legally avail nothing because of the fact that the record affirmatively shows that the order levying the tax had been made and placed of record at the time the order for injunction was applied for and granted? (2) Is the instrument the commissioners' court propose issuing in payment for building the courthouse a bond within the meaning of the Act of 1899, hereinbefore referred to? (3) If the record in this case shows affirmatively that the obligations the commissioners' court propose issuing and placing in circulation in payment for building the courthouse are bonds within the meaning and intent of the Act of 1899, in the light of the allegations in the pleadings and the record as a whole, and especially those allegations of the appellees showing that no election had been had, and that all orders passed by the commissioners' court, referring to the courthouse matter, as well as copies of all contract, plans, and specifications, as well as the obligations evidencing any indebtedness to be issued, are of record in the minutes of the commissioners' court of Floyd county, is there such showing made as entitles appellees to the relief sought by them and granted by the court below?

[7] As the record shows affirmatively that the commissioners' court had made and entered of record the order levying the tax, the levy of which was sought·to be enjoined in the bill, before the order for injunction was granted, and as the commissioners' court have no power to collect taxes, but under the law that duty devolves on another officer not made a party to this suit in the bill, the order restraining the commissioners' court from levying and collecting the tax complained of

was without warrant. See Stephens, State Comptroller et al., v. Texas & Pacific Railway Company, 100 Tex. 177, 97 S. W. 309.

The question of whether or not the moneyed obligations to be issued and circulated by the commissioners' court in this case are in form and substance bonds, within the meaning and intent of the Act of 1899, is under the record made a grave question; they certainly possess many of the characteristics of bonds as defined by our courts and others, as well as text-writers, while they also possess many of the attributes of ordinary warrants or orders on the county treasurer.

[8] Under the conclusions we have reached, however, it becomes unnecessary for us to decide whether they are bonds within the meaning and intent of the Act of 1899 or not, and we therefore do not decide that question, for the reason that, even if they be bonds within the meaning and intent of the Act of 1899, still, in the light of the record as presented, appellees were not entitled to relief by a court of equity, as they have an adequate remedy at law.

There is no allegation in the pleadings, nor was any proof introduced tending to show, that the records of the commissioners' court, or the contract, or certificate of indebtedness to be issued, stated anything other than the true facts as they actually existed, and as all purchasers of county obligations, such as those in controversy, are bound, not only to know what the law is, but to know on what orders and contracts made by the commissioners' courts, in so far at least as they are placed of record, they are based for their legality and binding force, we hold that, under the record in this case, even if the evidences of debt are bonds within the meaning and intent of the Act of 1899, they would be absolutely void and could not pass into the hands of an innocent holder. See Ball v. Presidio County, 88 Tex. 60, 29 S. W. 1042; City of Austin v. Nalle, 85 Tex. 520, 22 S. W. 668; Polly v. Hopkins, 74 Tex. 145, 11 S. W. 1084; Pomeroy's Equity (Student's Ed. 1907) § 1399.

Because appellees' bill, when considered in connection with the answer of appellants and the written and oral evidence introduced on the hearing below, shows affirmatively that appellees were not entitled to the relief sought, or any part thereof, the order entered by the court below, granting a temporary injunction, will be reversed, the injunction dissolved, and the cause here rendered for appellants, the costs in this court, as well as the costs incident to the appeal, being here taxed against appellees; and it is so ordered.